FRED. H. SMITH, Appellant, v. THE NATIONAL BENEFIT SOCIETY of the City of New York, Respondent.

The provision of the act of 1883 (§ 18, chap. 175, Laws of 1883), providing for the incorporation of co-operative life insurance societies, which declares that membership in such a society gives the member the right to make a change in his payee or beneficiary without the consent of such payee or beneficiary, applies simply when the original designation is in the nature of an inchoate or an unexecuted gift; it does not prevent a contract between the member and the payee by which a vested right passes to the latter, and in such case, without his consent, the payee may not be changed.

Where, therefore, pursuant to an arrangement between T. and a creditor, to the effect that the former would secure his debt by an insurance on his life, he became a "benefit member" of a corporation organized under said act, and by the certificate issued to him the society agreed to pay the sum insured to the creditor, "if living," *held*, that the latter stood as an assignee of the policy, and that the transfer was not revocable.

In an action upon the policy, the defense was that T., in pursuance of a fraudulent scheme to defraud defendant and other insurance companies, procured a large amount of insurance upon his life and then committed suicide. Defendant was allowed to prove, under objection and exception, that T., when pressed for money, and about the time he procured the insurance in question, made application to thirty-six insurance companies, and obtained insurance to a large amount. *Held*, no error.

Also *held*, it was competent to give in evidence letters and telegrams of T. to friends and relatives indicating a sane and deliberate intent to consummate the fraud.

Defendant was allowed to prove by one B. that shortly before the insurance was affected, he went, at T.'s request, to the latter's friends to raise money for him, and failing to accomplish this, on his return, T. said he was a man who must have money, and if he could not raise it would commit suicide. *Held*, no error.

B. was also allowed in the same connection to detail inquiries by T. as to the easiest mode of producing death. *Held*, no error.

Another witness was permitted to give testimony of declarations on the part of T. of intent to commit suicide rather than endure poverty or hard work, in connection with inquiries about insurance, and with an endeavor to get into another benefit society. *Held*, no error.

Also *held*, that proof of suicide in such manner as to indicate it was the culmination of a deliberately conceived purpose of fraud, was competent and necessary, although by the terms of the policy death by suicide was not made a defense.

*It seems,* in such a case any and all acts of the alleged perpetrator of the fraud and all declarations, not histories of past transactions, showing the origin and progress of the fraudulent intent, its manner of growth and the motive, are competent as part of the *res gestæ.*
Reported below, 51 Hun, 575.

(Argued June 11, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 12, 1889, which affirmed a judgment in favor of defendant entered upon a verdict, and affirmed an order denying a motion for a new trial.

This was an action upon a membership certificate or policy of insurance issued by defendant, insuring the life of John Tyler.

The facts, so far as material are stated in the opinion.

*Joseph A. Shoudy* for appellant. Where a policy contains no stipulation making suicide a violation of its conditions, or one of the exceptions to the liability of the company, self-destruction, even with suicidal intent, constitutes no defense to the action. (*Fitch* v. *A. P. L. Ins. Co.,* 59 N. Y. 557; *Darrow* v. *F. F. Society,* 116 id. 537.) As suicide would have constituted no defense to the action, it follows that the intent to commit suicide, could not vitiate the policy in the hands of the plaintiff, a creditor to whom the same was issued directly, and who received it in good faith, with no knowledge or notice of such intent. (*Patrick* v. *E. L. I. Co.,* 4 Hun, 263; *Mills* v. *Rebstock,* 29 Minn. 280; *Dillibar* v. *H. L. Ins. Co.,* 69 N. Y. 264.) The court erred in the reception, as evidence against the plaintiff, of the declarations of John Tyler, both oral and written. (*Rawls* v. *A. M. L. Ins. Co.,* 27 N. Y. 287; *Fitch* v. *A. P. L. Ins. Co.,* 59 id. 573; *Edington* v. *M. L. Ins. Co.,* 67 id. 192, 193; *Cudney* v. *Cudney,* 68 id. 148; *Dillibar* v. *H. L. Ins. Co.,* 69 id. 256; *Mulliner* v. *G. M. L. Ins. Co.,* 1 T. & C. 448; *Edington* v. *Æ. L. I. Co.,* 13 Hun, 543; *Brown* v. *H. Ins. Co.,* 6 Daly, 522; 71 N. Y. 508; *Swift* v. *M. M. L. I. Co.,* 63 id. 191.)

The jury should have been instructed that, if, under all the circumstances disclosed in the evidence, they believed that death might have resulted from natural causes, they would not be justified in finding that the deceased died by his own hand. (*Mallory* v. *T. Ins. Co.*, 47 N. Y. 52; *Phillips* v. *L. E. L. Ins. Co.*, 26 La. Ann. 404.) The appellant was entitled to have the jury instructed: "That the presumption is, that a sane man will not commit suicide." (*Coffey* v. *H. L. Ins. Co.*, 3 J. & S. 314.) There was not sufficient evidence tending to prove that the deceased died by his own hand to justify the submission of that question to the jury. (*Mallory* v. *T. Ins. Co.*, 47 N. Y. 52.)

*Andrew J. Perry* for respondent.

FINCH, J.: The facts of this case are unusual and extraordinary. In answer to the plaintiff's demand for the sum payable by the defendant's policy of life insurance the company took upon itself the difficult burden of proving that the assured perpetrated a deliberate fraud, planned upon a broad scale, and accomplished by taking his own life; that his efforts to achieve success failing, and a future of poverty and debt seeming to await him, he determined to secure a large insurance upon his life, appropriate it to the payment of his creditors and the comfort and support of his relatives, and reach the result by suicide. The difficult burden was successfully borne, as the verdict of the jury has determined, and the sole inquiry now is whether the scope and range of the evidence admitted, showing the acts and declarations of the assured, transcended the lawful limit or violated the rules of evidence.

The plaintiff was a creditor of the assured, and stands in the case as the assignee of the policy from the date of its transfer to him. He describes, as a witness, the manner of its acquisition. Tyler owed him about $10,000, and upon demand of payment proposed to secure the debt by an insurance upon his life. The plaintiff assented. The conversation was in December, 1885, and, in pursuance of the agreement made,

the policy now sued was executed in June of the next year. By its terms the defendant constituted Tyler a "benefit member" of the "society," and agreed "to pay to Fred. H. Smith, creditor, if living, if not, to the heirs at law of said member" the sum insured. The plaintiff, having thus become the owner of the policy, objected on the trial to proof of the acts and declarations of Tyler as incompetent to affect or destroy the policy transferred. The General Term questioned his right, considered as an assignment carrying a vested interest, and rely upon section 18 of the Laws of 1883, under which the defendant company was organized. That section attaches the beneficial interest to the membership, and permits the member to change the payee or beneficiary of the insurance without the latter's consent. Where the right of the payee has no other foundation than the bare intent of the member, revocable at any moment, there can be no vested interest in the named beneficiary any more than in the legatee of a will before it takes effect. But the statute does not prevent a contract between the parties by force of which a vested interest does pass, in which respect the present case differs from *Hellenberg* v. *Dist. No. 1 I. O. of B. B.* (94 N. Y. 580). There the designation was in the nature of an inchoate or unexecuted gift, revocable at any moment by the donor, and remaining wholly within his control. Here the transfer was a collateral security for an existing debt, and the fact brought to the knowledge of the defendant company which explicitly promised to pay the plaintiff in his character as creditor.

Granting, however, that such was the relation of the parties, we are still of opinion that no material error is shown by the record, since all the evidence to which objection was made came fairly within the *res gestæ* and the rule permitting proof of the actual transaction involved in the issue. The limitations upon that rule are easily stated, but often difficult in their application. Those limitations were well described in *Tilson* v. *Terwilliger* (56 N. Y. 277). The declarations must be made at the time of the act done which they are supposed to characterize; they must be calculated to unfold the nature

and quality of the facts which they are intended to explain, and they must so harmonize with those facts as to form one transaction. That transaction, the thing done, the fact put in issue, was the fraud, which evidently was not a simple, but a compound and continuous fact, proceeding to its result by consecutive steps and separate acts, having necessarily an origin, a progress and an ultimate result, involving not only the intent of the assured, but also his sanity, without which the responsible intent could not exist. This fraud, therefore, could be studied and proved all along the line; and in all its stages, from origin to culmination, formed part of the issue to be investigated. If in such a case declarations are excluded which are merely narrative of a past transaction, the residue, so far as pertinent to the issue, will generally, and with few exceptions, be admissible in evidence.

It is thus not difficult to decide that the proof of applications by Tyler to thirty-six different insurance companies, by which he secured $282,000 of insurance upon his life, and his letters and telegrams to relatives and friends written and sent as steps or agencies in the consummation of his purpose, and indicating a sane and deliberate intent to consummate the fraud, which for more than a year had been in preparation, by a final act of suicide, were all admissible. But some of the evidence was more remote and approached so near to the outside boundaries of the *res gestæ* as to require a specific and particular examination.

The defendant was allowed to prove by Henry A. Bowen that, in the summer of 1885, he went, at the request of Tyler, to the latter's friends to raise money for him; that he failed to accomplish the purpose; that, on his return, he had a conversation with Tyler in which he informed him of that failure, in reply to which Tyler said he was a man who must have money, and if he couldn't raise it he would commit suicide. This was a few months before the process of insuring began, and tended to show two things, both of which were pertinent to the issue. It indicated an existing motive for the fraud in the want of money and the failure to obtain it, and the origin

and occasion of the alleged suicidal intent. The declaration accompanied and characterized an act which was itself admissible in evidence, for that act indicated the then desperate character of Tyler's financial situation, and the declaration explained the operation and effect of the fact upon his mind, its force and strength as a motive to the fraud, and the presence of a thought or contemplation of suicide in a contingency which did in fact occur. The evidence serves to indicate the origin and motive of the alleged suicidal intent, which grew to be the effective agency of the fraud.

In the same connection the witness was permitted to detail inquiries which Tyler made of Lutkin as to the easiest mode of producing death. These inquiries were rather acts than declarations, and show the assured in the process of acquiring information to effect easily and swiftly the destruction of his own life.

Similar testimony of an intent to commit suicide rather than endure poverty or hard labor, was given by the witness Trested, but in connection with inquiries about insurance and with an endeavor to get into a benefit society connected with the hat trade. The witness added Tyler's declaration that he intended to put a large insurance upon his life and make the boys happy.

These acts and declarations all occurred before the plaintiff took his policy as collateral, and when they affected no one but Tyler himself. They tended to show the origin and progress of the fraudulent intent, the manner of its growth and the motive from which it sprung. They indicate a sane and deliberate purpose moving steadily to its result, and constitute a part of the history of the fraud. They were contemporaneous with the fraud in its formative stages; they accompanied Tyler's efforts to raise money, which failed, and to procure an insurance upon his life which he knew he could not continuously maintain. They show the motive of the fraud and mark its progress, and harmonize so completely with all which afterward occurred as to constitute, with that, elements of the single transaction, the fraudulent conduct which raised the issue pre-

sented by the defense. And so I think the proof came fairly within the rule relating to the *res gestæ*, and did not transcend its limits.

Some of this evidence was resisted upon the ground that death by suicide was no defense under the terms of the policy. That is true; but the defense was fraud, and suicide the ultimate agency by which the fraud was accomplished. It was necessary, therefore, to prove it, and in such manner as to indicate that it was not an insane or sudden impulse, but the culmination and effective working out of a deliberately conceived purpose of fraud.

We think no error was committed in the admission of the evidence upon which the jury acted, and that, after due consideration of the exceptions taken to the charge, the case was fairly submitted for determination upon its facts.

The judgment should be affirmed, with costs.

All concur, except ANDREWS, J., not voting.

Judgment affirmed.