AETNA LIFE INS. CO. v. FLORIDA.

(Circuit Court of Appeals, Eighth Circuit.    September 16, 1895.)

No. 624.

LIFE INSURANCE—CONTEMPLATION OF SUICIDE—MISSOURI STATUTE.
        A statute of Missouri (Rev. St. 1889, § 5855) provides that, "in all suits
    on policies of insurance on life, * * * it shall be no defense that the
    insured committed suicide, unless it shall be shown * * * that the in-
    sured contemplated suicide at the time he made his application for the
    policy."   Held, that the word "contemplated," as used in such statute, is
    equivalent to "intended" or "had resolved," and that it is not sufficient to
    show that the insured, at the time of his application, had considered the
    subject of suicide, without any definite purpose to commit suicide.

In Error to the Circuit Court of the United States for the Eastern.
District of Missouri.

Frank M. Estes, for plaintiff in error.

L. R. Wilfley (W. F. Boyle and E. B. Adams, on the brief), for de-
fendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.    This action was brought by Nancy L.
Florida, the defendant in error, against the Aetna Life Insurance Com-
pany, the plaintiff in error, to recover the amount of two life insur-
ance policies issued by said company on the life of Alonzo K. Florida,
the plaintiff's husband.    Both of said policies were made payable to
the plaintiff as beneficiary.    One of them was executed on July 30,
1891, for the sum of $5,000; the other was executed on July 12, 1892,
for the sum of $10,000.    The plaintiff's husband committed suicide
on April 27, 1893, and a demand was thereafter made on the defend-
ant company for payment of the policies.    Payment was refused, and
the present suit was thereupon instituted.

On the trial of the case the circuit court instructed the jury, in
substance, that it was conceded by the defendant company that the
plaintiff was entitled to recover on the policies, "unless, at the time
Alonzo K. Florida made application for them, he was in contempla-
tion of committing suicide at some future time, so that by such acts
of self-destruction the insurance company would be defrauded of the
sum so insured"; and, as no exception was taken to this instruction,
we must assume, for the purpose of this decision, that the only de-
fense intended to be relied upon by the defendant company was the
defense pleaded in its answer, as follows:

    "Defendant states * * * that on the 27th day of April, 1893, and with-
in two years from the date of said policies, said Florida committed suicide;
and the defendant alleges the fact to be that said Florida, at the time that he
made his said applications to the defendant for said policies, contemplated
suicide; that, at the time of making said applications for said insurance, said
Florida contemplated and intended to secure the said contracts of insurance
from this defendant with the intention soon thereafter to take his own life;
that the said purpose and intention of said Florida was not known to the
defendant, and was purposely concealed by him in order that he might secure
said policies of insurance, and thereafter, by taking his own life, enable his
representatives to secure the benefits accruing under said policies; that the

said acts of said Florida were a fraud upon this defendant; and that, by reason of said acts of said Florida, said policies of insurance became wholly void."

It should be stated in this connection that the policies in question were executed and delivered in the state of Missouri, and that at the date of their execution the following statutes were in force in that state:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury." Rev. St. Mo. 1889, § 5849.

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." Rev. St. Mo. 1889, § 5855.

In the circuit court of the United States for the Eastern district of Missouri, where the case was tried, the plaintiff recovered a judgment for the full amount of the policies; and the case was brought to this court for review on a writ of error sued out by the defendant company. The errors assigned relate to the exclusion of testimony and to the charge of the trial court. There are numerous assignments of the former kind, but it would subserve no useful purpose to review them in detail, as most of the questions propounded which were excluded were obviously improper questions, because they were calculated to elicit hearsay or secondary evidence, or the conclusions of witnesses rather than the facts on which such conclusions were based, or because the questions were designed to establish the existence of particular facts by common rumor, or because the questions asked were too vague and general, or a mere repetition of questions that had already been asked and answered. We shall forego any discussion of the several assignments of error to which the last remark applies, confining ourselves to those exceptions taken which seem to us to be most tenable.

At one stage of the trial, counsel for the defendant company offered in evidence what purported to be the will of Alonzo K. Florida, deceased, for the purpose, as stated by him at the time, of showing the condition of the testator's mind. It was objected to and excluded, and an exception was saved. We cannot decide whether this ruling of the trial court was right or wrong, because the alleged will is not found in the bill of exceptions, and, without examining it, it is impossible to say what it may have tended to show with respect to the testator's purpose or mental condition. The defendant also appears to have offered in evidence a large number of claims which had been filed in the probate court of the city of St. Louis against the estate of Alonzo K. Florida. These were objected to, the claims were excluded, and an exception was saved. The claims in question appear to have been excluded because the circuit court was of opinion that they had no tendency to show the financial condition of the deceased

at or prior to the taking out of the policies in suit. Whether that ruling was erroneous or otherwise cannot be determined, because the claims are not contained in the record. The ruling of the trial court must be presumed to have been correct. A witness for the defendant company was also asked the following question: "What was Mr. Florida's financial condition during the winter of 1892 and 1893? I will put it this way: Do you know what his financial condition was during the winter of 1892 and the beginning of 1893?" The answer to this interrogatory was excluded, on the ground that it could have no tendency to show the financial condition of the deceased in July, 1891, and in July, 1892, when the policies were taken out, and that no attempt had been made to furnish authentic evidence of his financial condition at the latter dates. We cannot say that there was any material error in this ruling, although the testimony would doubtless have been competent, and would probably have been admitted if counsel had undertaken to show that the indebtedness existing against the deceased in the winter of 1892 and 1893 had its origin prior to the issuance of the policies, or either of them. Without pursuing this branch of the case at any greater length, it will suffice to say that none of the errors assigned on account of the exclusion of testimony appear to us to be tenable.

The question in the case of paramount importance is whether the circuit court properly defined the words "contemplated suicide," as used in Rev. St. Mo. § 5855, supra. On this subject the court charged the jury as follows:

"The fact of suicide is no defense, unless it be the culmination of a purpose formed at the time application was made for the respective policies. Unless, therefore, you believe from the weight of the evidence that on the 30th day of July, 1891. at the time of making application for the policy of that date, Alonzo K. Florida contemplated thereafter committing suicide, and thereby enabling his wife to collect the amount named in the policy, then your verdict upon the first count must be for the plaintiff. * * * Unless you believe from the weight of the evidence that on the 12th day of July, 1892, at the time of making application for the policy of insurance of that date, Alonzo K. Florida did so with the contemplated, well-formed purpose of thereafter committing suicide, and thereby enabling his wife to collect the amount named in the policy, your verdict must be for the plaintiff upon the second count of the petition. * * * The fact, if from the evidence you believe it to be a fact, that Alonzo K. Florida committed suicide, constitutes in itself no defense on the part of the insurance companies under this clause. In order to make a defense out of such fact, you must believe from the preponderance of the evidence that Alonzo K. Florida, at the time he made application for either or both of the policies of life insurance involved in this suit, contemplated suicide; and by contemplated is meant there was a complete, well-formed purpose of taking his own life, and that purpose culminated by actually killing himself, with a view and for the purpose of defrauding the defendant company out of the money stipulated in the policy to be paid."

The objection made to this part of the charge, and the only objection thereto, is that the court declared that the word "contemplated" meant the same as the word "intended." It is insisted that there is a material distinction between the words "contemplated" and "intended"; that the former word means "attentively considered," "thought about," whereas the latter word signifies "a more determinative state of mind," a well-formed purpose; and that the legislature must be

presumed to have used the word "contemplated" in the sense above suggested. The proposition maintained by the defendant company is thus concisely stated by its counsel:

"It was not necessary for the defendant to show that Florida effected this insurance with the deliberate purpose to commit suicide; it was sufficient to show that he was 'considering with attention' the project of suicide, and effected the insurance with the design that, in case his contemplation should ripen into actual perpetration of suicide, then his beneficiaries should be provided for out of the proceeds of the insurance. * * * Hence it follows that the theory expressed throughout the several portions of the charge bearing on this point, that 'contemplated suicide' meant a predetermined, well-formed purpose of suicide, is erroneous, and those portions of the charge expressing this conception were erroneous."

It is no doubt true that the primary signification of the word "contemplate" is to consider attentively or to meditate; but it is equally true that a secondary meaning of the word is to "intend"; and in ordinary conversation the word "contemplate" is frequently used as a synonym for the word "intend,"—that is, to express a well-formed purpose. Moreover, instances are not wanting where the word "contemplate" has been held to be synonymous with the words "expect" or "intend." Thus, in Buckingham v. McLean, 13 How. 151, 167, the words "in contemplation of bankruptcy," as used in the bankrupt act of 1841 (5 Stat. 442, c. 9, § 2), were held to be tantamount to the expression "expecting or intending to commit an act of bankruptcy." See, also, Jones v. Howland, 8 Metc. (Mass.) 377.

We think, however, that the sense in which the legislature intended to use the word "contemplated" in the statute now under consideration, can be best determined by considering the statute itself and the connection in which the word occurs. The statute was primarily designed to prevent the plea of suicide from being thereafter interposed as a defense to an action on a policy of life insurance. It declares that, "in all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide." The subsequent clause, "unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy," was not intended to create or afford to life insurance companies a new defense to such actions, but rather to state an exception to the general rule first enunciated. The legislature was, doubtless, aware of the fact that at common law, without the aid of any statute, it was competent for an insurance company to show, by way of defense to an action on a life insurance policy, that the assured had taken out the policy with the preconceived intent of thereafter committing suicide, and that such purpose was subsequently executed. It, doubtless, intended by the concluding clause to preserve the right to still make that defense. Smith v. Society, 123 N. Y. 85, 25 N. E. 197. This seems to us to have been the manifest purpose of the concluding paragraph of the statute. It recognizes the existence of a defense well known to the law, to wit, the defense of fraud, and authorizes the insurer to make that defense. It must be borne in mind that the general purpose of the statute was to curtail the rights of insurance companies rather

than to enlarge them, wherefore it cannot well be presumed that the legislature intended to create in their favor a new statutory defense consisting in the fact that the assured, prior to his application for insurance, had considered the expediency of committing suicide in a given emergency, although he had formed no fixed resolution to do so. We think, therefore, that the contention that the legislature used the word "contemplated" to signify a state of mind in which the assured had considered or thought about the subject of suicide without having any well-defined purpose or intent, is not tenable.

Another objection to the construction sought to be placed upon the statute by the defendant company is that it renders the law too uncertain and difficult of application. If we adopt the defendant's definition of the word "contemplated," and assume that it was used by the legislature in that sense, then the inquiry immediately arises, when can a person be said to have so far considered the subject of suicide, or to have so had that thought in mind, as to vitiate a policy of life insurance? In the practical administration of the law, courts will find it difficult to answer this question to the comprehension of a jury. The line must necessarily be drawn somewhere between that amount of thought or contemplation which will and that which will not defeat a policy, because a subject may be considered with different degrees of intensity or attention, and it will hardly do to say that any amount of thought on the subject of suicide as a future possibility, at the time of taking out a policy, will serve to avoid it if the assured eventually dies by his own hand.

Upon the whole, therefore, we conclude that the statute should be construed to mean that hereafter it shall be no defense to a suit upon a life insurance policy that the insured committed suicide, unless it shall be proven to the satisfaction of the court or jury that the insured intended or had resolved to commit suicide at the time when he made his application for the policy. This, as we understand the charge, was the view that was entertained by the trial court and substantially expressed in its instruction, and in thus declaring the law no error was committed. The judgment of the circuit court is therefore affirmed.