Merchants' Life Ass'n v. Treat.

---

## Merchants' Life Association v. Harry W. Treat and Ferdinand W. Peck, Jr.

1. PRACTICE—*Opening and Closing of the Case.*—In an action upon a policy of insurance, where the defendant company by stipulation admits that the plaintiffs have a *prima facie* case, the defendant is entitled to the opening and close.

2. SAME—*Effect of Admitting a Prima Facie Case.*—In an action

upon a policy of life insurance, where the parties stipulate that the plaintiffs have a *prima facie* case, such stipulation admits that they also have an insurable interest in the life of the deceased, but it does not preclude the defendant from overcoming such *prima facie* case by showing to the contrary.

3. SUICIDE—*Declarations of the Deceased at the Time of Making His Application for the Policy.*—In an action on a policy of life insurance where the defense of suicide is set up, evidence that at the time the deceased made his application for the policy he asked the agent if his company paid losses on suicides and upon receiving a negative answer said something about canceling his application, is competent, and should be admitted.

4. LIFE INSURANCE—*Application and Policy Constitute the Contract.*—Where a written application for a policy of life insurance is required and signed and a policy is issued upon it, the application and the policy constitute a written contract between the insured and the company, and where a controversy arises as to what the contract is, such controversy is to be determined by the application and the policy.

5. LIMITATIONS—*In Policies of Life Insurance.*—Insurance companies have the right to insert in their policies provisions limiting the time in which suits shall be brought to recover on such policies, and such provisions are enforceable for the protection of the company.

Assumpsit, on a policy of life insurance. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1901. Reversed. Opinion filed November 7, 1901.

This suit was brought on an insurance policy for $5,000, issued by the appellant, the Merchants' Life Association, a Missouri corporation, upon the life of Robert I. Helliwell, in favor of appellees, Harry W. Treat and Ferdinand W. Peck, Jr., copartners of said Helliwell.

By stipulation the appellees were allowed to introduce any evidence under their declaration which they might introduce under any declaration on an insurance policy; and under the general issue appellant was allowed to introduce any evidence competent thereunder or competent under any special plea.

On the trial appellant admitted the *prima facie* case of appellees, and on such admissions was given the opening and close.

The undisputed facts are that on the 14th of August, 1895, deceased made application for the policy in suit at the office

of Helliwell, Treat & Co., in the Stock Exchange Building in Chicago, to one Stelling, agent of appellant. The policy was delivered in said office by Ellis, an agent of the company, on August 16, 1895. The application showed that Helliwell already had $33,000 life insurance. By the application he covenanted that the policy should be void (save as to share in actual reserve) in the event "I commit suicide, whether sane or insane," and "I also agree that no action of law or suit in equity shall be maintained or recovery had on said policy   *   *   *   unless such action or suit be commenced within one year from the date of my death."

The application was referred to in the policy and expressly made part of the contract of assurance.

Assured was found dead in the barn in the rear of his house at Oak Park, Illinois, on the evening of December 14, 1895, with a bullet wound in his head. Suit was filed in the Superior Court of Cook County on August 6, 1897, more than one year after the death of assured.

There was no conflict of testimony as to the following facts:

Assured came to his death by a pistol bullet from a 32-caliber pistol, the bullet entering on the right side of his head, penetrating a little above the level of the eyes, and in the hair. There were powder marks under the skin around the wound. The shot entered on a line at right angles with the side of the head. The first witness who saw deceased was Edward W. Cross. He was then dead. Afterward Cross found a 32-caliber Smith & Wesson pistol behind some cases some ten feet from the body, the place having been pointed out to him by the daughter of the deceased. The pistol belonged to deceased. It had been freshly discharged. Helliwell was apparently insolvent, and there were unsatisfied judgments against him in Cook county, one dated September 20, 1892, for $2,935, another dated June 23, 1893, for $832.59.

The insurance company was a corporation organized under the laws of Missouri to carry on a life insurance busi-

ness on the assessment plan. Under the laws of that State such companies were, in 1895, forbidden to take risks on lives in which the beneficiary had no insurable interest.

On the trial defendant offered to show the following facts:

That in the opinion of the doctor, who qualified as an expert, the wound was suicidally inflicted; that the assured immediately after signing the application on August 14th, and before the policy was delivered, followed the agent, Stelling, out into the hallway of the Chicago Stock Exchange Building and there asked the agent if his company paid losses on suicides, and on learning it did not, made some remark about canceling the application; that no hue and cry was raised after the death of Helliwell to apprehend any supposed murderer, and that no one has been arrested charged with that crime; that Helliwell's daughter told witness Cross how the pistol came to be concealed between the packing cases.

The court rejected all such evidence; to which defendants saved exceptions.

The court, at the close of defendant's evidence, gave a peremptory instruction to the jury to find for appellees, and a verdict for $6,174.50 was returned. Motion for new trial was entered and overruled and judgment entered on the verdict, from which judgment this appeal is prosecuted.

FRANK P. BLAIR, attorney for appellant.

JOHN S. COOPER and CLARK VARNUM, attorneys for appellees.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by the learned counsel for appellant that the judgment should be reversed upon the following grounds: First, because it does not appear that appellees had any insurable interest in the life of Helliwell; second, because the court erred in rulings upon the admission of evidence; third, because under the terms of the contract

Merchants' Life Ass'n v. Treat.

of insurance, no suit could be maintained upon the policy unless such suit was begun within one year from the time of the death of the assured; and fourth, because there was evidence tending to establish the theory of defense, viz., that Helliwell had committed suicide; that such evidence should have been submitted to the jury, and that it was error to exclude it and to peremptorily direct a verdict for the appellees.

We are of opinion that the first contention of appellant, viz., that the judgment should be reversed because it is not affirmatively shown that appellees had an insurable interest in the life of Helliwell, can not be sustained. The stipulation of the litigants upon the trial admitted that appellees had established a *prima facie* case. This admitted as well that they had an insurable interest in the life of Helliwell, so far as *prima facie* showing was concerned, as any other fact material and necessary to a recovery. It did not, of course, preclude appellant from overcoming that *prima facie* showing, but it left the burden upon appellant to do it, and it was not done.

It is urged that the trial court erred in excluding testimony of Cross as to what the daughter of Helliwell had told him regarding the finding of the revolver. The daughter of Helliwell told Cross where to find the revolver, viz., behind some boxes or cases. She was not produced as a witness. Cross was permitted to testify that she told him where to find the revolver, but was not permitted to testify to the remainder of her conversation, *i. e.*, to give all of her statement as to how the revolver came to be there. The evidence was of great importance. If she had found the revolver, owned by the deceased, lying at his hand when she first discovered the body, it would support most strongly the other facts tending to establish a suicide; while if the revolver was first discovered by her at a distance from the body, and so located as to preclude the possibility of the deceased having placed it there after he was mortally wounded, it would support the theory of the appellees that he came to his death in a manner other than by suicide. In general the

evidence would be clearly incompetent, for it would be hearsay only. But it is said that after a part of the conversation between Cross and the daughter of deceased relative to the location of the revolver had been admitted, the remainder of that conversation became competent. If the part of her statement to Cross which was admitted, had been presented in evidence by appellees, the contention would at least demand consideration; but inasmuch as it was introduced by the appellant, such introduction and its admission afford no ground for admitting more of hearsay evidence when objected to, as it was here objected to by appellees. We are of opinion that the exclusion of this evidence was proper. The court was clearly right in excluding evidence proffered to show that there was no attempt made to apprehend any supposed murderer of the deceased. Such an inquiry would open investigation upon lines too remote to be material and competent upon the issues of fact presented. There was no error in excluding the proffered testimony of Dr. Matthews, whose opinion was asked as to whether the wound was accidentally inflicted. It was competent for the expert to give his opinion, as he did, as to the proximity of the pistol to the head of the deceased, judging from the powder marks, and the angle at which the pistol was held, judging from the course of the bullet, but from these facts and opinions it was for the jury, not for the expert, to draw the conclusion as to accident or suicide.

A much more serious question is presented in the exclusion of part of the deposition of Stelling, the agent of the appellant, who solicited and obtained the insurance in question. It was proposed to show by him that Helliwell, immediately after signing the application for the policy sued upon, and before the policy was issued, followed Stelling out into the hallway of the building where the application was signed, and then and there asked Stelling if the company paid losses on suicides, and upon receiving a negative answer, said something about canceling his application.

It is contended that this evidence should have been

admitted as material and competent upon the issue of the alleged suicide of the deceased.   The question is one of first impression in the courts of review of Illinois.   There are decisions in cases where the admissions of the assured are sought to be used in suits brought by beneficiaries, but they are for the most part admissions as to condition of health, and so related to the application for insurance and the medical examination as to be held part of the *res gestæ*. Schwartz v. Berkshire Life Ins. Co., 91 Ill. App. 494.

Upon this precise question of the admissibility of statements of the assured, made before the issuing of the policy, and tending to establish that the assured took the insurance in anticipation of committing suicide, we are able to find but one authority, viz., Smith v. The National Benefit Society, 123 N. Y. 85.   In that case the New York court held that it was not error to admit evidence of statements of the assured made about the time of the procuring of the insurance, to the effect that if he failed to raise funds he would commit suicide.   It was also permitted in that case to prove that the assured was insolvent when the policy was taken, and that he had made inquiries as to the easiest mode of causing death.   This evidence was held to be competent upon the ground that the defense of the company amounted to a charge of a fraudulent scheme by which the assured undertook to obtain insurance upon his life and then kill himself.   It was held that these various declarations made before the taking of the policy in question, when no one save the assured was in interest in the matter, tended to establish the fraudulent undertaking and were properly a part of the *res gestæ*.   The court said:

" It is thus not difficult to decide that the proof of applications by Tyler to thirty-six different insurance companies, by which he secured $282,000 of insurance upon his life, and his letters and telegrams to relatives and friends written and sent as steps or agencies in the consummation of his purpose, and indicating a sane and deliberate intent to consummate the fraud, which for more than a year had been in preparation, by a final act of suicide, were all admissible.   But some of the evidence was more remote

and approached so near to the outside boundaries of the *res gestæ* as to require a specific and particular examination. The defendant was allowed to prove by Henry A. Bowen that, in the summer of 1885, he went, at the request of Tyler, to the latter's friends to raise money for him; that he failed to accomplish the purpose; that, on his return, he had a conversation with Tyler in which he informed him of that failure, in reply to which Tyler said he was a man who must have money, and if he couldn't raise it he would commit suicide. This was a few months before the process of insuring began, and tended to show two things, both of which were pertinent to the issue. It indicated an existing motive for the fraud in the want of money and the failure to obtain it, and the origin and occasion of the alleged suicidal intent. The declaration accompanied and characterized an act which was itself admissible in evidence, for that act indicated the then desperate character of Tyler's financial situation, and the declaration explained the operation and effect of the fact upon his mind, its force and strength as a motive to the fraud, and the presence of a thought or contemplation of suicide in a contingency which did in fact occur. The evidence serves to indicate the origin and motive of the alleged suicidal intent, which grew to be the effective agency of the fraud. In the same connection the witness was permitted to detail inquiries which Tyler made of Lutkin as to the easiest mode of producing death. These inquiries were rather acts than declarations, and show the assured in the process of acquiring information to effect easily and swiftly the destruction of his own life. Similar testimony of an intent to commit suicide rather than endure poverty or hard labor, was given by the witness Trested, but in connection with inquiries about insurance and with an endeavor to get into a benefit society connected with the hat trade. The witness added Tyler's declaration that he intended to put a large insurance upon his life and make the boys happy. These acts and declarations all occurred before the plaintiff took his policy as collateral, and when they affected no one but Tyler himself. They tended to show the origin and progress of the fraudulent intent, the manner of its growth and the motive from which it sprung. They indicate a sane and deliberate purpose, moving steadily to its result, and constitute a part of the history of the fraud. They were contemporaneous with the fraud in its formative stages; they accompanied Tyler's efforts to raise money, which failed, and to procure an

insurance upon his life which he knew he could not continuously maintain. They show the motive of the fraud and mark its progress, and harmonize so completely with all which afterward occurred as to constitute, with that, elements of the single transaction, the fraudulent conduct which raised the issue presented by the defense. And so I think the proof came fairly within the rule relating to *res gestæ*, and did not transcend its limits."

We find a decision holding that statements by the assured, indicating that he contemplated suicide, made after the issuing of the policy, are not competent in a suit by the beneficiaries. Jenkin v. Pacific M. L. Ins. Co., 63 Pac. Rep. 180.

This decision cites and relies upon many cases in which it has been held that statements by the assured as to condition of health made after the issuing of the policy, are not competent in a suit by the beneficiary.

But no one of these cases goes to the point which is made controlling in the New York case, viz., that these admissions, made before the policy is issued, when the assured alone is in interest as a contracting party with the insurance company, and tending to show a fraudulent scheme upon the part of the assured in the taking out of the policy, are competent because they are so closely interwoven with and a part of the fraudulent transaction as to be *res gestæ*. The reasoning of the New York decision is logical and it appeals to the understanding. In the absence of any authority of this State precisely in point, and upon this authority, as well as upon first impression, we hold that the evidence was competent and should have been admitted.

It is urged that the evidence upon the issue of suicide was sufficient in support of appellant's contention to warrant the submission of it to the jury. We are of opinion that this contention is sound. The assured was found dead in a stall in a barn in the rear of his house. His death was caused by a bullet wound in the head. The evidence tended strongly to show that the bullet which caused his death had been discharged from a revolver belonging to the deceased, and that the revolver had been held close to his head when

fired. This revolver was found by one of the witnesses some ten feet distant from the dead body and behind or between some boxes. A daughter of the deceased pointed out the place where the revolver was found. She was not called as a witness. All these facts tended, in some degree, to establish that the deceased had killed himself, and a verdict of the jury to that effect could not be said to be wanting sufficient support in the evidence. Therefore, we are of opinion that if the plaintiffs below, appellees here, were entitled to have their case submitted to the jury at all, the defendant, appellant here, was also entitled to a submission to the jury of this evidence supporting its theory of suicide. But the further question is presented for our determination, viz., were appellees, under all the evidence, entitled to a recovery at all, and should the learned trial court not have peremptorily directed a verdict for the defendant below instead of directing a verdict for the plaintiffs there. It is urged, on behalf of the appellant, that inasmuch as the application for insurance, signed by the assured, provided that no action at law or suit in equity should be maintained or recovery had on the policy unless such action or suit be commenced within one year from the date of the death of the assured, and inasmuch as it is established beyond controversy that this suit was begun after the lapse of one year from the death of Mr. Helliwell, therefore by the very terms of the policy the plaintiffs could not recover. We are of opinion that this contention must be sustained. By the terms of the contract of insurance, the application is made a part of such contract. Its provisions are, therefore, to be given their due weight in a construction of the contract. Those provisions are a part of the contract and binding upon the beneficiaries. 1 Joyce on Insurance, 190–196; The Commercial Mut. Accident Co. v. Bates, 176 Ill. 194.

In the case cited our Supreme Court said:

"Where a written application is required to be signed by the assured, and is so signed, and a policy of insurance is issued upon the application, as was the case here, the appli-

Merchants' Life Ass'n v. Treat.

cation and the policy constitute a written contract by and between the assured and the insurance company, and where a controversy arises in regard to what the contract is between the parties, that controversy must be determined by the application or the policy."

Insurance companies have the right to insert such provisions limiting the time within which a suit may be brought to recover upon a policy, and such provisions are enforceable for the protection of the company when made a part of the contract. The P. M. & F. Ins. Co. v. Whitehill, 25 Ill. 466; Andes Ins. Co. v. Fish, 71 Ill. 620; Illinois L. S. Ins. Co. v. Baker, 153 Ill. 240.

It is insisted by the learned counsel for the appellees, that this provision limiting the time within which a suit might be brought, is merely a promise or undertaking, on the part of the assured, and is not binding upon the beneficiaries. We are of opinion, however, that this provision is a part of the contract of insurance, and that it in effect imposes a valid limitation upon that contract.

Counsel also contend that there are two papers called "applications," which were signed by the assured, and that the other and not this application, containing the provision as to limitation of time for bringing suit, should be construed as the application which is made by the terms of the policy a part of the contract of insurance. To this contention we can not assent. The policy reads:

"In consideration of the first annual premium of one hundred and four dollars and — cents, the written and printed application for this policy, which is hereby made a part of this contract, and the payment of premium," etc., the appellant company promises to pay, etc.

There are two written or partly written and partly printed documents, each marked "Application for Insurance." The first consists mainly of questions and answers by the assured as to condition of health, family history, etc., and is accompanied by a certificate by the medical examiner of the appellant company. The second relates to age, occupation, other insurance carried by the assured, etc., and it is in this paper, marked "Application for Insurance," that the pro-

vision is contained to the effect that no suit shall be maintained on the policy unless begun within one year from the death of the assured. This application begins as follows:

" Desiring a policy of insurance in the Merchants' Life Association of the United States, I make the following answers and agreement the basis of the policy contract with me."

Each of these papers, called " application," was signed by Helliwell. It is difficult to see how it could possibly be held that this document entitled "Application for Insurance," and containing the specific agreement that it is the basis of the policy contract, and referred to in the policy as a part of the consideration for the issuing of it, can be held to be other than a valid part of the contract of insurance. By its terms this suit, begun after the lapse of a year from the date of Helliwell's death, is barred. The insurance company had the legal right to thus limit its liability. Under the clear and unequivocal limitation, this suit can not be maintained. Therefore, the appellees had no right of recovery, and the learned trial court should have directed a verdict for appellant.

The judgment is reversed.