LOUIS GOLDSTEIN, as Administrator, etc., of BEN GOLDSTEIN, Deceased, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY and Another, Defendants.*

Supreme Court, New York County, October 19, 1928.

*William Lurie* [*Copal Mintz* of counsel], for the plaintiff.

*Louis H. Cooke*, for the defendant New York Life Insurance Company.

---

* Mod., 225 App. Div. 642.

FRANKENTHALER, J. Plaintiff, the administrator of the assured, moves to strike out as insufficient in law each of the four defenses to the various causes of action pleaded in the complaint. The first defense alleges that the policies which are the basis of the suit were applied for pursuant to a conspiracy between the assured and the beneficiary, which had for its object the collection of the insurance from the defendant company through the assured's disappearance under circumstances which would indicate that he had died; that in accordance with the conspiracy the assured attempted to simulate a drowning in the belief that the beneficiary would rescue him and enable him to disappear and share in the proceeds of the policies after their collection; that the assured was, however, deceived by the beneficiary as to the contemplated rescue and was violently precipitated by the latter into the waters of Gravesend bay and drowned; that said drowning was the result of a deliberate and premeditated design on the part of the beneficiary to kill the assured and constituted murder in the first degree, for which the former was duly convicted, and that immediately on learning of the fraud the defendant company notified plaintiff that it elected to rescind and cancel the policies and offered to return to plaintiff the amount of the premiums theretofore paid. It seems to me that the foregoing allegations state a good defense to the causes of action on the policies. It is true that the conspiracy alleged did not have in view the drowning of the assured. Nevertheless, it cannot be gainsaid that according to the defense the latter's murder was a direct, proximate and natural consequence of the conspiracy. The situation is, therefore, unlike that presented in *Ampersand Hotel Co. v. Home Ins. Co.* (198 N. Y. 495), where there was no causal connection between an attempt to defraud the insurer and the loss insured against. Nor is there any merit to the contention that section 101 of the Insurance Law prevents the company from raising the defense under discussion in that it provides that the policy and the application attached shall constitute the entire contract between the parties. It is improbable that section 101 was ever intended to deprive the insurer of the right to rescind the contract under circumstances such as those which are alleged to have existed here. In *Smith v. National Benefit Society* (123 N. Y. 85), although suicide was not a defense under the policy, it was held that the taking out of the policy with the intent of committing suicide was a fraud upon the insurance company which barred any recovery. That decision was rendered prior to the enactment of section 101 of the Insurance Law, but an examination of the opinion discloses that the holding was not based upon the existence of a provision

in the policy making fraud a defense. As section 101 does no more than define the terms of the policy it follows that it cannot affect the assertion of a defense which does not depend for its efficacy upon the language of the policy. This is not the case of an insurer's reliance upon a false representation not embodied in the policy. (See *Murphy* v. *Colonial Life Ins. Co. of America*, 163 App. Div. 875.) Here the fraud consisted not of an untrue affirmative representation, but of the assured's omission to inform the company that it was in reality insuring a swindle rather than a life. It went to the very heart and essence of the policy, to such an extent that it may well be said that there never was in fact any valid contract of insurance. Various other objections are urged with regard to the defense under consideration, among them that it states conclusions rather than facts, but they appear to me to be unfounded. In the second defense it is alleged that the policies were applied for by the assured " at the instance of " the defendant Joseph Lefkowitz; that the beneficiary "was changed to the defendant Joseph Lefkowitz " some time after the issuance of the policies; that thereafter Lefkowitz murdered the assured; and that as a result there can be no recovery on the policies. It is clear that a beneficiary who murders the assured forfeits all rights to the insurance on the latter's life. It seems, however, that under such circumstances the great weight of authority is in favor of permitting a recovery by the estate of the assured. (4 Cooley Ins. 3154; Richards Ins. [3d ed.] 81; Vance Ins. [1904 ed.] 393, and cases cited. See, also, *Welch* v. *Travelers' Ins. Co.*, 178 N. Y. Supp. 748; *Hewitt* v. *Equitable Life Assurance Society*, C. C. A. 9th Circuit, 8 F. [2d] 706.) The theory upon which this is allowed is not altogether clear. Some cases contain language to the effect that both insurer and insured contemplated the insurance should be paid to some one, and that, therefore, it ought not to be forfeited. I find it difficult to agree that the company should be required to pay merely because it would otherwise be " unjustly " enriched. It seems to me that a recovery by the estate of the assured can be justified only on the basis that the implied intention of the parties was that if the beneficiary should be unable to take, the insurance should be paid to those who would take in the absence of a beneficiary. (See *Hewitt* v. *Equitable Life Assurance Society, supra.*) However, whatever the reasoning may be upon which the doctrine is based, it is too widely recognized to be disregarded and the defense must accordingly be stricken out as insufficient in law. If the insurance had been procured by Lefkowitz, with an intention on his part to murder the assured, the insurer could doubtless defeat the action. (*Hewitt* v. *Equitable*

*Life Assurance Society, supra.*) But the second defense contains neither of those allegations. An averment that the policies were applied for by the assured " at the instance of " Lefkowitz is not equivalent to an allegation that the latter procured them. Whoever may have induced the assured to take out the insurance, the fact remains that according to the answer he, and no one else, was the applicant. The third defense differs from the second in that it is alleged, in addition, that after the issuance of the policies the assured delivered and assigned them to Lefkowitz, their beneficiary. By virtue of the assignment the assured surrendered all right, title and interest in the policies, and his contractual relation with the company may be regarded as having terminated. The only respect in which he still remained connected with the policies was that they became payable on his death. Under such circumstances I can see no ground for any implication that the parties intended that if the assignee, the sole owner of the policies, should be disqualified from taking the insurance should be paid to the estate of the assured. Nor do I know of any authority for extending to assignees the rule applicable to beneficiaries. The third defense is accordingly sustained as sufficient in law. The fourth defense is practically identical with the first and appears to involve needless repetition. The motion is granted to the extent of striking out the second defense and denied as to the other defenses, with leave to serve an amended answer within twenty days on payment of ten dollars costs.