METROPOLITAN LIFE INS. CO. v. JAMES MAY, Administrator, et al.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

Kelly & Kelly and Fowler & Fowler, all of Knoxville, for appellant.

Kennerly & Key, of Knoxville, for appellee.

HEISKELL, J. This is a bill of interpleader. It was sustained as such and the claimants of the proceeds of a $5000 insurance policy

were ordered to interplead. They have done so and it is not necessary to notice the interpleader further.

O. H. May on January 19, 1918, took out a $5000 insurance policy in the Metropolitan Life Insurance Company, making his wife, Bernice Lillian May the beneficiary. On August 3, 1927, O. H. May shot and killed his wife and on August 8, 1927, he died. James May qualified as administrator of the estate of O. H. May, representing his next of kin and Melvin Standifer representing the next of kin of the wife, Bernice Lillian May, became her administrator. The administrator of the wife contends that the husband having feloniously killed the wife, those claiming under him can take nothing of the proceeds of this policy. The administrator of the husband admits that O. H. May killed his wife, but says (1) He was insane at the time, and therefore the killing was not felonious within the meaning of the law and those claiming under him are not precluded from taking. (2) The policy provides that the insured may change the beneficiary at any time, therefore the wife had no property right in said policy, but a mere contingency, while the husband remained the owner of the policy, and therefore, those claiming through the husband, seek to take nothing under and through the wife and are not precluded from taking by reason of the killing, even conceding it to have been felonious.

The Chancellor held that O. H. May was not insane when he killed his wife, therefore the killing was felonious and the husband and those claiming under him could not claim any benefit from said policy. From the decree James May, administrator of O. H. May, has appealed and assigned errors.

As indicated in the foregoing statement, the assignments of error present two contentions. First: That O H. May was insane at the time he killed his wife, therefore the killing was not felonious, and Code 4171a1, does not apply. Second: That even if the killing was murder, that by reason of the right reserved to the insured to change the beneficiary, the wife took no property in the policy and therefore the husband upon her death took nothing from her but took by virtue of his ownership of the policy and those claiming under him are not prevented from taking the proceeds of the policy by virtue of the killing, conceding it to be felonious. As to the first contention there is much controversy and much conflicting evidence. Almost the whole record is built around this issue.

As to the second proposition, there is no dispute about the controlling facts. It is not denied that O. H. May killed his wife and that she was the beneficiary designated in the policy at the time of her death. It is admitted that the policy contains the following provision:

"This policy is written with the right of the insured to change the beneficiary. When such right has been reserved, and if there be no written assignment of this policy on file with the company, the insured may (while the policy is in force) designate a new beneficiary, with or without reserving right of change thereafter, by filing written notice thereof at the home office of the company accompanied by the policy for suitable endorsement. Such change shall take effect upon the endorsement of the same on the policy by the company and not before. If any beneficiary shall die before the insured the interest of such beneficiary shall vest in the insured."

It is undisputed that O. H. May paid the premiums, retained the policy and did not assign to any one. It is contended upon this state of facts that Mrs. May did not have any property in this policy and therefore even if O. H. May was not insane when he killed her, that his next of kin and not hers must take the proceeds of the policy.

In Life Association v. Winn, 96 Tenn., 226, it is held under a policy containing such a provision where the wife of the assured was made beneficiary, that she took no vested interest. The court says:

"Until this event takes place, owing to the right of revocation, which is, by the condition, reserved to the assured, the beneficiary has a mere expectancy, depending upon the will and act of the assured. Martin v. Stebbins, 126 Ill., 387; Mason Mutual Benefit Association v. Burkhart, 110 Ind., 189; Supreme Conclave v. Cappella, 41 Fed. Rep., 1; 1 Bacon on Ben. Soc., Sec. 306; Proly Mutual Association Fund v. Allen, 106 Ind., 593; Mutual Association v. Montgomery, 70 Mich., 587. And this expectancy does not rise to the dignity of a property right. Byrne v. Casey, 70 Tex., 247; Manning v. A. O. U. W., 86 Ky., 136; Mason Mutual Benefit Association v. Burkhart, supra.

"As is said by the court of last resort in New York: 'Where the right of the payee has no other foundation than the bare intent of the assured, revocable at any moment, there can be no vested interest in the named beneficiary any more than in the legatee of a will before it takes effect.' In such a case, 'the designation' of the beneficiary 'is in the nature of an inchoate or unexecuted gift, revocable at any moment by the donor, and remaining wholly under his control.' Smith v. N. B. Society, 123 N. Y., 85.

"Mr. May, in his work on Insurance, Vol. II, Sec. 399m, adopts this view, and this court has already distinctly recognized it as sound in Catholic Knights v. Kuhn, 91 Tenn., 214,

following in this the intimations in the earlier case of Tennessee Lodge v. Ladd, 5 Lea, 720.''

The following Tennessee cases are to the same effect: Handwerker v. Diermeyer, 96 Tenn., 619; Fisher v. Fisher, 99 Tenn., 629; Lane v. Lane, 99 Tenn., 639; and' authorities outside of the State follow the same rule. Mutual Benefit Life Ins. Co. v. Swett, 222 Fed., 200; Lowenstein v. Koch, 152 N. Y. S., 506; Ellis v. Fidelity & Casualty Co., 165 Iowa, 713, 144 N. W., 574.

The provision of the policy: ''If any beneficiary shall die before the insured, the interests of such beneficiary shall vest in the insured'' might be very important in the absence of a provision for the right of the insured to change the beneficiary. With this latter provision in the policy, the other provision would seem to have no force unless it be as a mere equivalent of a change of beneficiary. As between the insurer and the insured there might be some reason in saying the company should not be obliged to recognize a new beneficiary unless the name was endorsed on the policy, but the death of a beneficiary before the death of the insured should authorize the company to recognize the insured as sole owner of the policy. But as between the insured and a designated beneficiary, the beneficiary, by reason of the reservation in the insured of the right to change the beneficiary, takes no property right until the death of the insured before that of the .beneficiary. So the death of the beneficiary puts an end to the expectancy, just like the death of a devisee under a will before the death of the testator. The result follows in each case from the fact that the expectancy does not take effect until the death of the creator of the expectancy. It is not necessary to provide that the interest in mere expectancy shall return to the insured or testator in case of the death of the beneficiary. The interest has never gone out of the one who created the expectancy and he or his heirs or distributees claim, not by reason of any reversion of title from the beneficiary, but by reason of title which never passed out of the owner.

Code Section 4171a1, in short, means that no one who murders any one shall take property from the person murdered, by deed, will or inheritance. Conceding then that O. H. May feloniously killed his wife, did her death pass to him any property in this policy? Or, to put it differently, if Mrs. May had died a natural death, would any property in said policy have been acquired from her by O. H. May upon her death? If we have interpreted the cases aright, that no property in said policy or the proceeds thereof was ever acquired by Mrs. May, then of course nothing passed from her to him in the way of property at her death and Code 4171a1, does not apply.

If the husband, O. H. May, had died before his wife, she would have taken the proceeds of the policy by virtue of his death. Therefore, if she had feloniously killed him, she would have been precluded from taking. If a devisee in a will murders the testator, the devisee cannot take under the will. But suppose the testator murders the devisee. Nothing had passed to the devisee. The testator would have taken nothing by the natural death of the devisee and the heirs of the devisee can claim nothing as against the testator by reason of the felonious killing. No more can the next of kin of the wife in the present case claim anything by reason of the murder of Mrs. May.

But for the law as set out in Code 4171a1, it is easy to see the temptation to a devisee or legatee to take the life of a testator when nothing but that life stood between him and the property. But there could be no such inducement to the testator to kill the devisee or legatee when he could change his will at any time. Likewise we can see how the beneficiary might be tempted to kill the insured in order that the beneficiary might collect the proceeds before the insured could name another beneficiary, but it is not conceivable that if the only object of the insured was to remove the beneficiary, he should resort to murder when he could accomplish the purpose by simply changing the beneficiary in the policy. A purpose so improbable is not within the policy of the law against acquiring property by felonious killing.

In the case of Beddingfield v. Estell & Newman, 118 Tenn., 39, the title to the property in question was vested in the husband and wife jointly, creating an estate by entireties. The husband feloniously killed the wife and claimants under the wife insisted that under Code 4171a1, the husband could not take the property. The court held that by the deed to them jointly both husband and wife were seized of the whole estate, therefore the husband took under the deed and not from the wife upon her death, and therefore the statute did not prevent him and those claiming under him from taking the property. This is a strong affirmance of the rule relied on by appellant and sustained by the authorities cited supra.

Counsel for appellee cite and rely upon Box v. Lanier, 112 Tenn., 393. In that case the court held that the husband had only a contingent interest in the policy and that he assigned this interest to his wife "giving her the absolute and entire interest in the policy, so that upon her death leaving him surviving, he would take not under the terms of the policy, but by virtue of his right as surviving husband."

In that case the husband's claim was not by virtue of ownership of the policy as in the present case, but as husband taking property from the wife whom he had killed. This was within the language

and purpose of the common law which was the same as Code 4171a1. The case is not in conflict with the cases cited for appellant, but rather adds force to them by making a clear distinction.

In view of the rule laid down in the cases referred to, it is clear that those claiming under O. H. May claim by virtue of his ownership of the policy and not by reason of any interest coming to him from his wife upon her death. It is clear that the wife had no interest in the policy which could pass to the husband and therefore he and those claiming through and under him are not precluded from taking the proceeds of the policy by reason of his having killed her even though the killing was felonious.

Inasmuch as it seems clear to us that the contention of appellant must be sustained even conceding that the killing was of such felonious character as to make it murder in the first degree, we consider it unnecessary to take up the disputed question as to whether or not O. H. May was sane or insane. If it be found that he was sane it only leads to the conclusion that the killing was felonious and we have held that this does not affect the rights of appellant. If we hold that O. H. May was insane, the only result is another reason for reaching the same determination of the case we have reached already. The fifth, sixth and seventh assignments of error are sustained, the decree of the court below is reversed and a decree will be entered in favor of appellant in accordance with this opinion. Appellee will pay cost of appeal.

Owen and Senter, JJ., concur.