In re JOHN HATTON, INC., t/a Sessions, Debtor.

JOHN HATTON, INC., t/a Sessions, Plaintiff,

v.

Meryl HATTON; Estate of John Hatton; North American Company for Life and Health Insurance; and Frank Dileo Agency, Inc., Defendants.

Bankruptcy No. 87–2991.
Adv. No. 88–0362.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 6, 1989.

Robert O. Lampl, Paul R. Yagelski, George B. Mastovich, Pittsburgh, Pa., for debtor.

Patrick Livingstone, Mansmann Cindrich & Titus, Pittsburgh, Pa., for Meryl Hatton and the Estate of John Hatton.

Sidney R. Finkel, Marvin Miller, Baskin Flaherty Elliott & Mannino, P.C., Pittsburgh, Pa., for Frank Dileo Agency, Inc.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter presently before this court is the debtor/plaintiff's Motion for Summary Judgment on the issue of fraudulent conveyance of an insurance policy. Also before us is the question of the value of the insurance policy.

The Motion for Summary Judgment as to the fraudulent conveyance is granted. The court finds that the value of the insurance policy is $100,506.00.

## I. FACTS

In August of 1982, John Hatton and Robert Maruca entered into an oral buy-out agreement under which the debtor, John Hatton, Inc., would purchase life insurance policies on each with the corporation as the beneficiary. Upon the death of either of these principals, the survivor could either buy out the interest of the deceased or use the proceeds for corporate purposes.

Pursuant to the oral agreement, Robert Maruca and John Hatton contacted Frank Dileo of Frank Dileo Agency, Inc. ("Dileo"), an independent insurance broker, for the purpose of purchasing life insurance. On August 16, 1982, four applications were submitted to North American Company for Life and Health Insurance ("North American"). The first was on the life of John Hatton and was purchased and owned by the debtor. The primary beneficiary was to be the debtor, and as stated on the policy, the purpose was for business buy out. This purpose was in accordance with the oral agreement which allowed for the survivor to buy out the interests of the deceased or use the proceeds for corporate needs. The amount of the policy was $150,000.00.

The second policy applied for was on the life of Robert Maruca. This policy was also purchased and owned by the debtor. The purpose was to be for business buy out and the primary beneficiary was the debtor. Both of these policies were issued in November of 1982.

The remaining two policies are not in question in this case. They were purchased individually by John Hatton and Robert Maruca with the primary beneficiary to be their respective spouses.

In May 1985, both policies owned by the debtor were converted from term life insurance policies to Universal Life Plans with new face amounts of $100,000.00. This was implemented because the new plan would allow the policy to earn money.

John Hatton was diagnosed with lung cancer in 1983. His cancer progressively worsened and by 1986 John Hatton was receiving chemotherapy. In May 1986, John Hatton changed the beneficiary of the

life insurance policy owned by the debtor corporation. The beneficiary was changed from the debtor to John Hatton's spouse, Meryl Hatton. On July 31, 1986, John Hatton died of lung cancer and thereafter Meryl Hatton received the proceeds of the insurance policy in question, which amount totaled $100,506.00.

In November 1987, Robert Maruca, on behalf of John Hatton, Inc., filed for bankruptcy under chapter 11. Maruca also instituted this adversary proceeding suing North American and Dileo for breach of contract. Meryl Hatton and the Estate of John Hatton were sued for unjust enrichment, fraudulent conveyance, and fraud.

On April 19, 1989, this court considered motions for summary judgments, which were submitted by all parties. This court, at that time, indicated that it intended to grant these motions as to Dileo and North American. This court also indicated that it intended to grant summary judgment on the issue of fraudulent conveyance as to John Hatton, Inc.'s motion.

The defendant still questions the applicability of both the Bankruptcy Code and Pennsylvania's Fraudulent Conveyance Act to this matter. The defendant also questions the value of the insurance policy at the time of the change of beneficiary.

## II. ANALYSIS

### A. Pennsylvania's Fraudulent Conveyance Act is Applicable

The plaintiff, John Hatton, Inc. ("debtor"), brings this suit under 11 U.S.C. § 544(b) which states "[t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim."

The plaintiff asserts that the change of beneficiary to the insurance policy is voidable under the Pennsylvania Fraudulent Conveyance Act, 39 P.S. § 354. The defendant claims that neither 11 U.S.C. § 548, Fraudulent Transfers and Obligations, or 39 P.S. § 354 are applicable to this case. The defendant is correct

in that the plaintiff is barred from using 11 U.S.C. § 548 due to the "one year" provision. Section 548 states that transfers can be voided if they were "made or incurred on or within one year before the date of the filing of the petition." In the case at bar, the change of beneficiary occurred in May 1986 and the bankruptcy petition was filed in November 1987. This is approximately six months beyond the requirement of 11 U.S.C. § 548; therefore, plaintiff cannot use section 548 to void the transfer.

■ However, we do find that the plaintiff can use Pennsylvania's Fraudulent Conveyance Act to void the transfer. The Act states "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." 39 P.S. § 354.

The first requirement is that there be a conveyance. Defendant asserts that the changing of a beneficiary is not a conveyance. We find that it is a conveyance under the Fraudulent Conveyance Act. A conveyance is defined as including "every payment of money, assignment, release, transfer, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." 39 P.S. § 351. In *Fidelity Title Co. v. Union National Bank*, 313 Pa. 467, 169 A. 209 (1933), the court found that where insured had the right to change beneficiary and did so in an attempt to defraud creditors, this change was a conveyance applicable under the Fraudulent Conveyance Act.

Defendant relies on *Manhattan Life Ins. Co. of New York v. Evanek*, 762 F.2d 319 (3d Cir.1985), for the argument that a change of a beneficiary is not a conveyance. In that case the court held that a change of beneficiary was not a conveyance within the meaning of 20 Pa.C.S.A. § 6101. *Id.* at 321. The definition of conveyance under 20 Pa.C.S.A. § 6101 is different from that of 39 P.S. § 351.

Defendant also relies on *Lindsey v. Lindsey*, 342 Pa.Super. 72, 492 A.2d 396 (1985), for their argument. Again, that

case did not deal with the Fraudulent Conveyance Act. In that case a husband changed the beneficiary of his life insurance from his spouse to another person. At the time of the change there was an injunction preventing him from disposing of marital assets. The court concluded that this change of beneficiary was not a "conveyance of marital assets" and therefore not a violation of the injunction. *Id.* at 76, 492 A.2d at 398. Therefore, we hold that the changing of a beneficiary is a conveyance under Pennsylvania's Fraudulent Conveyance Act.

The second requirement under the Fraudulent Conveyance Act section 354 is that there be no fair consideration given for the conveyance. Fair consideration is assumed to have been given when "[i]n exchange for such property or obligation, as a fair, equivalent therefor and in good faith, property is conveyed or an antecedent debt is satisfied." 39 P.S. § 353. In the present case, Mrs. Hatton did not furnish any consideration to the owner of the insurance policy, that being the debtor. We find that the second requirement of the Fraudulent Conveyance Act is met.

■ The final requirement under section 354 is that the person incurring such an obligation be, or will be rendered, insolvent. In this case the debtor filed for bankruptcy in November 1987. Under 39 P.S. § 354, there is no requirement that the bankruptcy petition be filed within one year of the transfer. Therefore, we find that plaintiff has met all three requirements of section 354 of the Fraudulent Conveyance Act and summary judgment will be granted.

B. The Value of the Insurance Policy is the Full Amount of the Proceeds, $100,506.00

■ Meryl Hatton received $100,506.00 from the life insurance policy owned by the debtor. The defendant argues that if the policy is awarded to the plaintiff, the cash surrender value of the policy at the time of the conveyance is the proper amount to be awarded. This would be approximately

$579.00. The defendant bases this argument on the idea that John Hatton did not believe his death was imminent and that his illness might be defeated; therefore, he would not have been transferring anything of value. The defendant adds to this theory the fact that in 1985, John Hatton converted a $150,000.00 policy to this $100,-000.00 policy, and a terminally ill man would not do this. We reject this argument because both the insurance broker and Mr. Maruca testified that this conversion would be a benefit because their new policies could earn money.

The defendant also argues that John Hatton was very optimistic that he was going to defeat his illness. The evidence does not support this argument. The medical records reveal that from the time of the diagnosis in 1983 to Mr. Hatton's death in 1986, the cancer worsened. The defendant relies upon evidence which reports a 1986 nurse's report which states that Mr. Hatton "tolerated the chemotherapy quite well." The defendant's argument is that this is an indication that John Hatton was improving. We cannot so conclude without expert medical testimony as to Mr. Hatton's condition. "Tolerating chemotherapy" generally has no such indication, nor can we make the inference, that Mr. Hatton's condition improved. The evidence is clear and convincing that Mr. Hatton was diagnosed as having cancer. The illness worsened and was terminal.

Defendant asserts that the cash surrender value should be awarded as the proceeds of the policy. They rely on *Lindsey v. Lindsey*, 342 Pa.Super. 72, 492 A.2d 396 (1985), for this assertion. This case does not support the defendant's argument. The court in *Lindsey* found that only the cash surrender value of the life insurance policy could be considered a marital asset. As such, the cash surrender value of the policy was subject to the injunction which prevented Mr. Lindsey from disposing of marital assets. The face value of the policy, that being the full amount paid to the beneficiary upon Mr. Lindsey's death, was considered to be the proceeds of the policy.

We must follow the rule set out in *Reading v. Travelers Ins. Co.*, 24 F.Supp. 394 (M.D.Pa.1938), *aff'd*, 104 F.2d 257 (3d Cir. 1939), *cert. denied*, 308 U.S. 588, 60 S.Ct. 114, 84 L.Ed. 493 (1939). "The extent or amount of the insurer's liability on the death of the insured is controlled and measured by the terms of the policy or contract of insurance." In this case before us, the insurance policy defines "proceeds" as "[t]he amount payable on the Maturity Date, on the surrender of this policy prior to the Maturity Date, or upon the death of the insured." The only one of these to occur was the death of the insured and the proceeds paid were $100,506.00.

Therefore, we find the amount to be paid to John Hatton, Inc. is $100,506.00.