IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 2, 2022 Session

## MARTIN HOLMES ET AL. v. DAVID KARKAU ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 20-CV-49782W        James G. Martin, III, Judge**

_____

### No. M2021-00696-COA-R3-CV
_____

This is an action to set aside a change of beneficiary on a term life insurance policy under Tennessee's Uniform Fraudulent Transfer Act ("the TUFTA"), Tennessee Code Annotated §§ 66-3-301 to -314. The challenged event was the change of beneficiary from the wife of the insured/owner to two of their adult children, the form for which was executed by the wife as the attorney-in-fact for the insured/owner and transmitted to the insurance company the day before the insured/owner died. In pertinent part, the complaint alleged that the defendants—the wife and two adult children of the deceased insured/owner of the insurance policy—"devised and orchestrated" a "fraudulent scheme . . . to eliminate assets owned by [the insured's wife] in the event that Plaintiffs obtain a judgment against her" in a separate civil action. The complaint further alleged that "[t]he transfer of the beneficiary interest in the . . . insurance policy was a fraudulent transfer under T.C.A. § 66-3-305(a)(1) because it was made with the intent to hinder, delay or defraud Plaintiffs as creditors defined under the Act." The trial court dismissed the action under Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim for which relief could be granted under the TUFTA. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Martin D. Holmes, Nashville, Tennessee, pro se and for the appellant, Patricia Holmes.

G. Rhea Bucy and Linda W. Knight, Nashville, Tennessee, and Lauren Wynn Moss, Franklin, Tennessee, for the appellee, Wendy Karkau.

John O. Belcher and Katherine Garro McCain, Brentwood, Tennessee, for the appellees, David Karkau and Shaya Karkau Baird.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The genesis of the claims at issue occurred in 2013 when Martin and Patricia Holmes ("Plaintiffs") bought a house from Kenneth and Wendy Karkau in Brentwood, Tennessee. After moving in, Plaintiffs allegedly discovered several undisclosed defects. One year later, Plaintiffs sued Kenneth and Wendy Karkau for breach of contract, fraudulent misrepresentation, and violation of the Tennessee Consumer Protection Act. Plaintiffs sought various remedies, including compensatory and punitive damages.

In 2015, while the underlying action was pending, Kenneth Karkau died from complications of Alzheimer's Disease. After Kenneth's death, Plaintiffs continued with their suit against Wendy. That action is still ongoing in the Williamson County Circuit Court.

Plaintiffs commenced this action in September 2020 by filing a complaint against Wendy Karkau and two of Wendy and Kenneth's adult children, David Karkau and Shaya Karkau Baird (individually "Wendy," "David," and "Ms. Baird"; collectively, "Defendants").[1] Plaintiffs alleged that Defendants conspired to change the beneficiary on Kenneth's life insurance policy before he died in 2015 to protect the proceeds from any potential judgment Plaintiffs might obtain against Wendy in the pending real estate action. According to Plaintiffs, Wendy used a power of attorney to name David and Ms. Baird as the titular beneficiaries of Kenneth's policy in place of Wendy with the understanding that the proceeds would be used for Wendy's benefit. Plaintiffs alleged that Wendy then directed the proceeds to purchase a condominium in David's name, in which Wendy now lives. Plaintiffs asserted that the change of beneficiary constituted a fraudulent transfer under § 305(a)(1) of the TUFTA. The most pertinent allegations in the complaint read as follows:

> 7. This lawsuit arises out of fraudulent transfers, including the beneficiary interest in a life insurance policy insuring the life of

---

[1] The Estate of Kenneth Karkau was also named as an additional defendant. While Plaintiffs' cause of action against Mr. Karkau did not abate with his death, the cause of action survived only against "the personal representative of the tortfeasor or wrongdoer." Tenn. Code Ann. § 20-5-103(a); *see Vaughn v. Morton*, 371 S.W.3d 116, 120 (Tenn. Ct. App. 2012). Tennessee Code Annotated § 30-2-310(a) provides that all claims against a decedent's estate that are not filed with the probate court clerk, "in which suit has not been brought or revived before the end of twelve (12) months from the date of death of the decedent, shall be forever barred." *See also In re Est. of Tanner*, 295 S.W.3d 610, 620 (Tenn. 2009) ("The maximum time in any event for filing a claim is twelve months from the decedent's death." (quoting Jack W. Robinson, Sr. et al., 2 *Pritchard on Wills and Administration of Estates* § 802 (6th ed. 2007)). It is undisputed that an estate was never opened and more than one year has passed following Kenneth's death; therefore, any claims Plaintiffs may have had against Kenneth Karkau or his estate have abated.

Kenneth Karkau (the "Beneficiary Interest"), who was the husband of Defendant Wendy Karkau and the father of Defendants David Karkau and Shaya Karkau Baird prior to Kenneth Karkau's death on December 9, 2015.

. . .

18.  On or about June 21, 2003, Kenneth Karkau applied for a life insurance policy from West Coast Life Insurance Company ("West Coast Life") in the amount of $500,000.

19.  On or about September 18, 2003, West Coast Life issued a policy with a face amount of $500,000 insuring the life of Kenneth Karkau. In the policy, Wendy Karkau was named as the beneficiary of the $500,000 life insurance proceeds in the event of Kenneth Karkau's death.

20.  On December 9, 2015, approximately 22 months into the pendency of the Action brought by Martin and Patricia Holmes against Kenneth and Wendy Karkau, Mr. Karkau died due to complications from Alzheimer's Disease.

21.  On or about December 2, 2015, Wendy Karkau contacted West Coast Life to request change of beneficiary and transfer of ownership forms, which were sent to her by West Coast Life on or about December 2, 2015 and December 3, 2015.

22.  Thereafter, on or about December 8, 2015, Wendy Karkau (utilizing a Power of Attorney purportedly signed and executed by Kenneth Karkau), submitted a Change of Beneficiary form to West Coast Life, requesting that she be removed as the beneficiary of the $500,000 life insurance policy and that David Karkau and Shaya Karkau Baird be substituted as beneficiaries, each to receive 50% of the life insurance proceeds upon the death of Kenneth Karkau. . . .

23.  The Change of Beneficiary form and related documents were sent to West Coast Life from David Karkau . . . via Federal Express on December 8, 2015 or December 9, 2015. . . .

24.  On December 10, 2015, West Coast Life sent an Acknowledgement of Policy Change, acknowledging the change of beneficiary from Wendy Karkau to David Karkau and Shaya Karkau Baird.

25.  On or about January 4, 2016, Wendy Karkau reported the death of Kenneth Karkau to West Coast Life. On or about March 11, 2016,

West Coast Life approved death benefit proceeds payable to David Karkau and Shaya Karkau Baird, each in the amount of $251,726.04.

.    .    .

27. On October 28, 2016, David Karkau purchased a condominium located at 1842 Brentwood Pointe Drive in Franklin, Tennessee (hereinafter "the Condominium"). . . .

.    .    .

29. Payment for the Condominium was made, either directly or indirectly, from proceeds of the West Coast Life insurance policy which were disbursed to Defendants David Karkau and Shaya Karkau Baird as beneficiaries. . . .

30. David Karkau was the purchaser of the Condominium in name only. In reality, the true purchaser of the Condominium was Wendy Karkau, utilizing the life insurance proceeds which were unlawfully diverted to her two children, David Karkau and Shaya [Karkau Baird]. . . .

31. As further evidence that Wendy Karkau was the actual purchaser and owner of the Condominium, since moving into the Condominium on or shortly after October 28, 2016, Wendy Karkau has paid no rent, but has paid annual property taxes and insurance for the Condominium based on her bank account records subpoenaed by Plaintiffs. . . .

.    .    .

63. In Tennessee, the Uniform Fraudulent Transfer Act (the "Act") is codified at T.C.A. § 66-3-301 to T.C.A. § 66-3-313.

64. The Act prohibits transfers based on actual fraud, as codified at T.C.A. § 66-3-305(a)(1). Under T.C.A. §§ 66-3-305(a)(1), a transfer made by a debtor is fraudulent as to a creditor, whether a creditor's claim arose before or after the transfer was made, if the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor of the debtor.

65. Plaintiffs are "creditors" under the Act because they have a "claim" as defined by T.C.A. § 36-3-302(3).

66. Wendy Karkau and/or the Estate of Kenneth Karkau is/are a "debtor" who/which has a "debt" with Plaintiffs under the Act as defined by T.C.A. §§ 66-3-302(5) & (6).

- 4 -

.    .    .

68.     The transfer of the beneficiary interest in the West Coast Life insurance policy was a transfer as defined by T.C.A. § 66-3-302(12).

69.     The transfer of the beneficiary interest in the West Coast Life insurance policy was a fraudulent transfer under T.C.A. § 66-3-305(a)(1) because it was made with the intent to hinder, delay or defraud Plaintiffs as creditors defined under the Act. . . .

Defendants moved to dismiss the complaint under Tennessee Rule of Civil Procedure 12.02(6). They argued that the beneficiary change was not a "transfer" of an "asset" or "property" under the TUFTA because Wendy had a "mere expectancy" and no vested interest in the policy. In the alternative, Defendants argued that the cause of action was barred by the TUFTA's limitation period, which requires actions under § 305(a)(1) to be brought within four years of the alleged transfer or within one year after it could have reasonably been discovered. *See* Tenn. Code Ann. § 66-3-310(1).

In its Memorandum and Order of May 25, 2021, the trial court declined to dismiss the action under the TUFTA's statute of limitations upon the finding that material facts were in dispute. The court reasoned that the complaint alleged sufficient facts to establish that Plaintiffs did not discover the beneficiary change until September 2019. The trial court also rejected Defendants contention that a "mere expectancy" could not be subject to the TUFTA:

> The Court finds that, in general, a party can bring a cause of action under the TUFTA as a result of a transfer of a beneficiary interest. Under the plain terms of the statute, a beneficiary interest qualifies as an "interest in an asset." The "asset" is the life insurance policy because it is subject to ownership. *See* Tenn. Code Ann. § 66-3-302. The fact that a beneficiary interest could be a "mere expectancy" is unpersuasive. The statute's language is broad enough to encompass a claim based on a transfer of a beneficiary interest.

Nonetheless, the court found that the complaint failed to state a claim for which relief could be granted because Wendy's beneficiary interest fell under an exception in the TUFTA:

> Under Tennessee Code Annotated § 66-3-302, an asset does not include "[p]roperty to the extent it is generally exempt under nonbankruptcy law." Tenn. Code Ann. § 66-3-302(2)(B). Tenn. Code Ann. § 56-7-203 states:
>
>> The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the spouse and/or children, or

- 5 -

dependent relatives of the persons, shall be exempt from all claims of the creditors of the person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to that person.

Tenn. Code Ann. § 56-7-203. Under this statute, if the beneficiary of a life insurance policy is the spouse or child of the policy's owner, then creditors cannot claim the proceeds from the policy. In other words, the net amount payable under Kenneth Karkau's life insurance policy and the beneficiary interest are not considered "property" for the purposes of the TUFTA.

Based on the foregoing, the trial court dismissed the action.

This appeal followed.

## STANDARD OF REVIEW

A Tennessee Rule Civil Procedure 12.02(6) motion to dismiss "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). "The resolution of a Rule 12.02(6) motion to dismiss is determined by examining the pleadings alone." *Id.* "A defendant who files a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

When considering a motion to dismiss, "courts 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). "A trial court should grant a motion to dismiss 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). The trial court's legal conclusions regarding the adequacy of the complaint are reviewed de novo. *Id.*

Whether the applicable statute of limitations bars a claim is a question of law that is reviewed de novo with no presumption of correctness. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007). Likewise, we review a trial court's interpretation of a statute de novo with no presumption of correctness. *See In re Est. of Tanner*, 295 S.W.3d at 613.

ANALYSIS

Plaintiffs raise one issue on appeal: Whether the trial court erred in holding that the beneficiary interest transfer in the life insurance policy at issue from Wendy to David and Ms. Baird was not actionable under the TUFTA. More specifically, Plaintiffs argue that the trial court erred in finding that Tennessee Code Annotated § 56-7-203 exempts Wendy's "beneficiary interest" from her creditors' claims.[2] Further, Plaintiffs contend that the change of beneficiary constituted a fraudulent transfer under § 305(a)(1) of the TUFTA, which provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Tenn. Code Ann. § 66-3-305(a).

Defendants acknowledge that § 56-7-203 would not have protected the insurance proceeds from Wendy's creditors had she received the proceeds; nevertheless, Defendants argue that the trial court's decision to dismiss Plaintiffs' action can be affirmed on other grounds. In particular, Defendants maintain that the change of beneficiary was not a "transfer" of Wendy's "property" under the TUFTA because Wendy had a "mere expectancy" and no vested right or legal interest in the policy.[3]

Having considered the foregoing, we find the dispositive issue in this appeal is whether Wendy Karkau had an interest in Kenneth Karkau's life insurance policy that qualified as "property" under the TUFTA. We also find the statutory definition of three terms—asset, property, and transfer—controlling.

---

[2] Plaintiffs do not dispute the trial court's finding that Tennessee Code Annotated § 56-7-203 exempted the policy proceeds from Kenneth's creditors. As stated correctly in Wendy Karkau's appellate brief: "[A]ll of Kenneth's interests in the policy were absolutely exempt from the claims of *his* creditors, including the disputed claims asserted by the Holmeses. Tenn. Code Ann. § 56-7-203. Thus, Kenneth's interests in the policy were not 'assets' of his within the meaning of the TUFTA." (emphasis added).

[3] Defendants David Karkau and Shaya Karkau Baird also argue that the trial court should have dismissed the action under the TUFTA's statute of limitations.

The TUFTA defines "asset" as "property of a debtor." Tenn. Code Ann. § 66-3-302(2).[4] "Property" is defined as "anything that may be the subject of ownership." *Id.* § 302(10). "Transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." *Id.* § 302(12). Thus, a TUFTA "transfer" occurs when a debtor disposes of his "property" or an interest in his "property."

Our courts have described "ownership" as a "bundle of rights." *See Woods v. M.J. Kelley Co.*, 592 S.W.2d 567, 570 (Tenn. 1980). These rights include "(1) the right of possession, enjoyment and use; (2) the unrestricted right of disposition; and (3) the power of testimonial disposition." *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 96 (Tenn. Ct. App. 1987) (citations omitted); *see Ownership*, Black's Law Dictionary (11th ed. 2019) (defining "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others"). Other courts have held that, for the purposes of a fraudulent transfer action, "a legitimate and identifiable claim of entitlement" is necessary to show "ownership" by the debtor. *See, e.g.*, *Korth v. Luther*, 935 N.W.2d 220, 240 (Neb. 2019) (construing identical language in Nebraska's version of the TUFTA).[5] "Usually, inchoate interests do not satisfy the requirements of a legitimate legal claim constituting 'property' and, thus, an 'asset' that the debtor has 'acquired rights in.'" *Id.* at 239–40 (citations omitted).

Depending on the circumstances, the named beneficiary of a life insurance policy may have a "mere expectancy" or a vested interest. When the insured/owner of a policy has not reserved "the right to cut off or modify the interest of the beneficiary, the [beneficiary] has a vested interest in the policy, of which he cannot be divested without his consent." *Am. Nat'l. Ins. Co. v. Jackson*, 12 Tenn. App. 305, 310 (1930) (citations omitted). The same is true if the insured/owner has contracted away the right to change the beneficiary or if a court order has restrained the right. *See First Nat'l. Bank of Shelbyville v. Mut. Benefit Life Ins. Co.*, 732 S.W.2d 278, 279–80 (Tenn. Ct. App. 1987). But when the right to change the beneficiary has been reserved to the insured/owner and is not otherwise overridden, "the beneficiary named in the policy has a mere expectancy and has no vested right or interest in the policy." *Id.* at 279 (citing *Merritt v. Scruggs*, 112 S.W.2d 825 (Tenn. 1938); *Page v. Detroit Life Ins. Co.*, 11 Tenn. App. 417 (1929)). In this

---

[4] The TUFTA's definition of "assets" is subject to three exceptions. *See* Tenn. Code Ann. § 66-3-302(2)(A) to (C). The parties do not contend that any of these exceptions apply to Wendy's interest in the life insurance policy.

[5] "When examining provisions derived from uniform or model acts, we may appropriately use interpretations of similar provisions in other jurisdictions as a guide to interpreting our law." *Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 751 n.2 (Tenn. 2001).

circumstance, the named beneficiary's interest does not vest until the insured dies, at which time "[t]he policy . . . becomes a debt payable to the beneficiaries in accordance with the policy provisions." *Grossman v. Prudential Ins. Co. of Am.*, 325 S.W.2d 811, 813 (Tenn. Ct. App. 1959).

Plaintiffs do not contend that Kenneth's right to change the beneficiary of his policy was restrained by the policy's terms or otherwise overridden by a contract or court order.[6] Nevertheless, Plaintiffs contend that Wendy had a vested interest in Kenneth's policy because Kenneth "was incapable of removing Ms. Karkau as beneficiary due to the nature of his [health] condition" when the change was made in 2015. Plaintiffs, however, cite no authority for the proposition that an insured's incapacity causes the beneficiary's interest to vest. *See Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). And our caselaw suggests otherwise. *See Folts v. Jones*, 132 S.W.2d 205, 208 (Tenn. 1939) (finding beneficiary had "no vested interest" in insurance of her mentally incapacitated great-aunt). Moreover, Plaintiffs' complaint did not allege that Kenneth was incapable of making the change of beneficiary or that Wendy's actions exceeded her power of attorney. *See Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007) (the resolution of a Rule 12.02(6) motion "is determined by an examination of the complaint alone").

Because Plaintiff's complaint alleges no circumstance that would have given Wendy a vested interest in the policy, we conclude that Wendy's interest was a "mere expectancy" that did not constitute "a property right." *See Fid. Mut. Life Ass'n v. Winn*, 33 S.W. 1045, 1046 (Tenn. 1896). As our Supreme Court explained in *Fidelity Mutual Life Association v. Winn*, 33 S.W. 1045 (Tenn. 1896), a beneficiary's "mere expectancy" is analogous to a donee's interest in a future gift or a legatee's interest in a will before the testator's death:

> "Where the right of the payee has no other foundation than the bare intent of the assured, revocable at any moment, there can be no vested interest in the named beneficiary, any more than in the legatee of a will before it takes effect." In such a case "the designation" of the beneficiary "is in the nature of an inchoate or unexecuted gift, revocable at any moment by the donor, and remaining wholly under his control."

*Id.* at 1045–46 (quoting *Smith v. Nat'l Ben. Soc.*, 25 N.E. 197, 197 (N.Y. 1890)). Significantly, the Court stated that "this expectancy does not rise to the dignity of a property right." *Id.* at 1045 (citing *Byrne v. Casey*, 8 S.W. 38 (Tex. 1888); *Manning v. Ancient Ord.*

---

[6] We also note that the change of beneficiary did not transfer or change any of Kenneth's rights of ownership and control over the policy at issue.

*of United Workmen*, 5 S.W. 385 (Ky. 1887); *Masonic Mut. Ben. Soc. v. Burkhart*, 10 N.E. 79 (Ind. 1887)).

Consistent with these principles, we have held that a beneficiary with a mere expectancy has no right of testimonial disposition. *See Metro. Life Ins. Co. v. May*, 10 Tenn. App. 221, 224 (1929) ("[T]he death of the beneficiary puts an end to the expectancy, just like the death of a devisee under a will before the death of the testator."). We have also found that a beneficiary's expectancy does not constitute a marital asset in a divorce action. *See Bell v. Bell*, 896 S.W.2d 559, 562, 564 (Tenn. Ct. App. 1994); *see also In re Olien*, 256 B.R. 280, 284 (Bankr. E.D. Tenn. 2000) (finding debtor's expectancy was not part of debtor's bankruptcy estate). And while no Tennessee court has considered whether the unvested interest of a named beneficiary in a life insurance policy is "property" for the purposes of a fraudulent transfer action, our Supreme Court has noted that the expectancy of a son in his parent's estate is not a property interest subject to creditor's claims:

> [T]he expectancy of a son in the estate of his parent is not such a property interest as is the subject of attachment by a creditor during the life of the parent . . . . In such a case, the son has no property right whatever in the estate of the living parent. His hope of an interest upon his death can be denominated by no designation importing any personal interest, and hence is called an expectancy.

*Read v. Mosby*, 11 S.W. 940, 941 (Tenn. 1889).

Based on the foregoing, we find Wendy's expectancy was not a "subject of ownership" and therefore was not "property" under the plain language of the TUFTA.[7] *See* Tenn. Code Ann. § 66-3-302(10). Thus, the change of beneficiary on Kenneth's policy did not dispose of an asset owned or controlled by Wendy or an interest in her "asset." Accordingly, no "transfer" occurred as that term is defined in the TUFTA. *See id.* § 302(2),

---

[7] In their Reply Brief, Plaintiffs argue that even if Wendy's interest were a mere expectancy, the expectancy had value and was, therefore, an "asset" or "property" because she could have sold it in a viatical settlement contract under the Tennessee Viatical Settlement Act of 2009, Tennessee Code Annotated §§ 56-50-101 to -117 ("the TVSA"). Defendants counter this argument, stating that the TVSA applies only to contracts where the policy owner—not the beneficiary—sells an interest in the policy. We find it unnecessary to determine whether an agreement to convey Wendy's expectancy would qualify as a "viatical settlement contract" under the TVSA. In general, courts will enforce an agreement to convey an expectancy "if fairly made and based on valuable consideration." *Tate v. Greenlee*, 207 S.W. 716, 718 (Tenn. 1918). Even so, such an agreement is not the grant of a present interest; instead, it is "an agreement to convey" once the expectancy vests. *Id.* at 719 (quoting *Taylor v. Swafford*, 123 S.W. 350, 351 (Tenn. 1909)). In other words, the beneficiary can promise to convey property that he hopes to receive, but the beneficiary cannot alienate the expectancy itself. *See id.* ("It is an old and well-settled rule of the common law that, in order to constitute a valid contract of sale, there must be a grantor and grantee, and a thing in existence at the time of the contract; hence, under this rule, a mere possibility could not be conveyed.").

(12). Other courts interpreting identical statutes have reached similar conclusions. *See Great S. Life Ins. Co. v. Agric. Bldg. Co. Indus.*, No. 01-CV-1112(JMR/FLN), 2002 WL 924249, at *3 (D. Minn. May 1, 2002) (concluding that beneficiary change was not a transfer of property under Minnesota's UFTA); *In re Harrison*, 627 B.R. 832, 840, 840 n.7 (Bankr. E.D.N.C. 2021) (citation omitted) (applying definition of "transfer" in North Carolina's Uniform Voidable Transfers Act and concluding that "no transfer takes place when only a beneficiary designation is changed").

We recognize that some courts have found a change of beneficiary on a life insurance policy may be a "fraudulent conveyance" under various versions of the model Uniform Fraudulent Conveyance Act ("UFCA"). *See, e.g.*, *In re John Hatton, Inc.*, 104 B.R. 705, 707–08 (Bankr. W.D. Pa. 1989) (applying Pennsylvania's UFCA); *Headen v. Miller*, 190 Cal. Rptr. 198 (Ct. App. 1983) (applying California's UFCA). These cases, however, are of limited value because the UFCA's definition of "conveyance" differs from the TUFTA's definition of "transfer."

For example, Plaintiffs cite *United Bank v. Buckingham*, 247 A.3d 336 (Md. 2021), in which the Maryland Court of Appeals held that "the transfer of the right to receive insurance proceeds from one individual to another by altering the beneficiary designation on a life insurance policy falls within the definition of 'conveyance' provided in [the Maryland UFCA]." *Id.* at 348. The definition of "conveyance" in the Maryland UFCA, however, "**includes** every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Md. Code Ann., Com. Law § 15-201(c) (emphasis added). Construing this language, the court in *United Bank* concluded that "the use of the term 'includes' and the disjunctive nature of the language in CL § 15-201(c) demonstrate the purpose of the General Assembly to provide illustrative examples of conveyances without any intent to limit the phrase 'transfer' to 'tangible or intangible property.'" 247 A.3d at 348. In contrast, the TUFTA states that "'[t]ransfer' **means** every mode . . . of disposing of or parting with **an asset or an interest in an asset**," Tenn. Code Ann. § 66-3-302(12) (emphasis added), and that "'[a]sset' **means** property of a debtor," *id.* § 302(2) (emphasis added). Thus, unlike the UFCA, the TUFTA limits the phrase "transfer" to "property."[8]

---

[8] Notably, not all courts have interpreted the UFCA as broadly as the court in *United Bank*. In *First Wisconsin National Bank of Milwaukee v. Roehling*, 269 N.W. 677 (Wis. 1936), the Wisconsin Supreme Court interpreted the UFCA's definition of "conveyance" as excluding a change of beneficiary:

> [W]e consider that, except as to such cash surrender value as a policy of life insurance may have at the time of a change in beneficiary, the change does not constitute a conveyance capable of being fraudulent. Such a change is not literally within the definition of conveyance contained in [the Wisconsin UFCA], nor is it a conveyance as that term is

Our conclusion that the change of beneficiary on Kenneth's policy did not fall within the plain language of the TUFTA aligns with the TUFTA's purpose, which is "to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." Unif. Fraudulent Transfer Act § 3, cmt. 2, 7A pt. II U.L.A. 48 (2006).[9] Thus, "the various provisions of the UFTA together operate to require that creditors show in a concrete way that they were injured by the transaction they are seeking to set aside." *Korth*, 935 N.W.2d at 241. "A transfer of property in which the debtor has no equity cannot be the subject of a fraudulent transfer action because the creditors cannot show they would have received anything by avoiding the transfer and were injured thereby." *Id.* (citations omitted); *cf. Marsh v. Galbraith*, 216 S.W.2d 968, 970 (Tenn. Ct. App. 1948) ("[I]n order that a conveyance or transfer may be attacked as fraudulent and void as against creditors, it is necessary that prejudice to their rights has resulted." (citing 37 C.J.S. Fraudulent Conveyances § 61)). Here, Plaintiffs were not prejudiced by the change of beneficiary because, at that time, Wendy had no legal or equitable interest that would have been available to them but for the change.

For these reasons, we affirm, albeit on other grounds,[10] the trial court's determination that the complaint fails to state a claim under the TUFTA upon which relief can be granted.[11]

---

generally understood in the law. It is merely the appointment of a person to take property which arises only upon the death of the insured. It does not, standing alone, involve or include an assignment of the policy itself. Whatever the interest affected by the change, it puts out of reach of the creditors no property that could at the time of the transfer be reached by them.

*Id.* at 679. *See also Equitable Life Assur. Soc. of U.S. v. Hitchcock*, 258 N.W. 214, 216 (Mich. 1935) (applying Michigan's UFCA and concluding that "nothing except the cash surrender value of an insurance policy, the actual value of what was transferred, is property within the meaning of the statute"); *cf. Wornick v. Gaffney*, 544 F.3d 486, 492 n.3 (2d Cir. 2008) (citation omitted) (finding that "merely changing a beneficiary" was not within same definition of "conveyance" in New York's fraudulent transfer statute because "a beneficiary holds only an inchoate interest in an insurance policy").

[9] The official comments to a uniform or model act, "while not binding, are very persuasive in interpreting the statute to which they apply." *LeTellier v. LeTellier*, 40 S.W.3d 490, 493 n.2 (Tenn. 2001) (quoting *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997)).

[10] "This court may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *White v. Johnson*, 522 S.W.3d 417, 425 n.3 (Tenn. Ct. App. 2016) (citing *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004)).

[11] Because we have resolved this appeal on other grounds, we need not address whether the trial court erred by not dismissing the complaint under the TUFTA's statute of limitations.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Martin and Patricia Holmes.

_____
FRANK G. CLEMENT JR., P.J., M.S.